IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVEN DAVID COOK                                   PLAINTIFF

VS.                NO. 4:15-CV-228 BRW

BRUCE PENNINGTON, ET. AL.,                   DEFENDANTS

EXHIBIT NO. 5
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EXCERPTS FROM DEPOSITION
OF NURSE GLENN SONK

1  A.  Yes, sir.
2  Q.  Just a minute. Let me grab my glasses. I'm old and
3  I need my glasses. Okay. Let's start on the very first
4  line, where it says 6/29/12.
5  A.  Okay. "On 6/29/12, medical staff called to booking
6  because they, booking, said he had," which he, meaning
7  Steven, "had a hernia protruding through his skin. Dr.
8  Troxel and I, Deputy Furr -- and Deputy Furr went to
9  booking to see, or check on, the inmate," Steven Cook.
10 "Upon setting eyes --
11 Q.  I tell you what, let's don't insert --
12 A.  Okay.
13 Q.  -- anything extra. You inserted Steven Cook's name
14 there, you said -- I want you to read it exactly as it
15 is on this paper.
16 A.  Okay. Okay.
17 Q.  Okay? And I may go back and ask some supplementary
18 questions.
19 A.  Okay.
20 Q.  But right now, we need it exactly as it is here.
21 A.  Okay.
22 Q.  Thank you, sir.
23 A.  Yes, sir. "Upon setting eyes on inmate in holding
24 cell, it appears he stood up off of toilet and at that
25 time, we could see -- we, medical, could see inmates

1  rectum or rectal lining protruding, or prolapsed, from
2  his rectum.
3      "Dr. Troxel gave medical no orders to assess,
4  evaluate, or check vital signs, but proceeded to
5  sergeant's office and alerted staff that he recommended
6  that inmate be sent out to hospital. While in
7  sergeant's office, even Sheriff Pennington agreed to Dr.
8  Troxel's recommendation."
9  Q.   Hold on just a minute right there. Okay, go ahead.
10 A.   "Dr. Troxel left facility shortly after, but again,
11 gave no orders for medical care for inmate as he
12 expected that Inmate Cook would soon be sent out to
13 hospital. Over the next two to three days, there were
14 no reports of Inmate Cook needing any type of medical
15 assistance reported to the medical department.
16     "On 7/2/12, when I was talking to Dr. Troxel on the
17 phone regarding matters for the day, he asked if the
18 gentleman with the prolapsed rectum was still there --
19 or here. I told him that he was. Dr. Troxel asked why.
20 I told him I didn't know; that I gave -- that I guess
21 someone decided not to send him to the hospital.
22     I was under the impression that I may have to try
23 and return the prolapsed rectum to its place for this
24 inmate and when I asked Dr. Troxel if he needed me to do
25 this, he told me not to touch the gentleman, Inmate

1  Cook.
2      "Dr. Troxel explained that on 6/29/12 he gave his
3  recommendation to staff in sergeant's office and Sheriff
4  Pennington was in agreement with Dr. Troxel, that he
5  should send him out as well. Dr. Troxel said that since
6  they didn't send inmate out, after he
7  suggested/recommended it, that he did not want me to
8  touch the guy at all, and it would be on the jail & not
9  on medical, ACH.
10     "A little later that afternoon, I was called to
11 booking, when I got to booking, Sergeant Brown said for
12 me to don gloves. I did and proceeded to a cell where
13 they were standing. The gentleman with the prolapsed
14 rectum was on the floor on back with legs spread and
15 lifted and rectum protruded.
16     "Jail staff did not attempt to insert rectum back
17 into position & I told jail staff that I was told by my,
18 ACH's MD that I was not to touch individual at all.
19 After this, it was approved & arranged with jail staff
20 to send inmate out, after Deputy Ford asked me in my
21 opinion did inmate medically need sent out and I told
22 him that he did.
23     "They released Cook and I thought Deputy Ford was to
24 transport cook to the ER. Late entry, entered 7/6/12.
25 Glenn Sonk, LPN."

1  Q.   Okay.  Let me go back and ask you some specific
2  questions about what you have related so far in these
3  two pages.
4  A.   Okay.
5  Q.   Okay?
6  A.   Yes, sir.
7  Q.   First off, it says that you and Dr. Troxel and
8  Deputy Furr went to booking to check on the inmate --
9  A.   Yes, sir.
10 Q.   That's correct, right?
11 A.   Yes, sir.
12 Q.   And the inmate was Steven Cook?
13 A.   Yes, sir.
14 Q.   And were you able to observe the prolapsed colon?
15 A.   Yes, sir.
16 Q.   Okay.  Is this a -- a serious medical problem?
17      MR. JACKSON:  Object to the form.
18 Q.   (BY MR. ADCOCK)  Okay.  You can answer the question.
19 A.   I don't really know if it's a serious problem.  A
20 doctor would probably know more than I do.  I assume
21 it's something needs treated.  But as far as whether
22 it's medical or urgent condition, I'm not positively
23 sure.
24 Q.   Okay.
25 A.   I don't think it's a medical urgent or emergent

```
 1  condition.
 2  Q.    Okay.  Do you know if it's painful?
 3  A.    I do not know.
 4  Q.    Okay.  Now, it's you and Dr. Troxel and Deputy Furr
 5  went to the booking and looked at Inmate Cook?
 6  A.    Yes, sir.
 7  Q.    Now, the next thing you said is that Troxel
 8  proceeded to sergeant's office and alerted staff that he
 9  recommended the inmate be sent out to hospital.  Did you
10  accompany Dr. Troxel to the sergeant's office?
11  A.    I don't exactly recall that I did.  But according to
12  what the notes say, I must have been in there with them
13  because of --
14  Q.    Okay.
15  A.    Of what I wrote where it says that Pennington agreed
16  to the recommendation.
17  Q.    Okay.  Do you recall at this point exactly what
18  Troxel told the administration of the jail?
19  A.    I don't remember -- I don't recall exactly what he
20  said.
21  Q.    Okay.
22  A.    Verbatim, no, sir.
23  Q.    It says in your note that even Sheriff Pennington
24  agreed to Dr. Troxel's recommendations.  How do you know
25  that?
```