IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**STEVEN DAVID COOK**                                                                                    **PLAINTIFF**

**VS.**                                        **NO. 4:15CV-228 BRW**

**BRUCE PENNINGTON,** *et. al.,*                                                          **DEFENDANTS**

**PLAINTIFF'S
STATEMENT OF UNCONTESTED FACTS**

**COMES THE PLAINTIFF, Steven David Cook,** by and through his attorneys, **Edward G. Adcock, Arkansas Bar No. 83001**, and **C. Daniel Hancock, Arkansas Bar No. 2001-022**, and, per the provisions of Rule 57 of the Federal Rules of Civil Procedure as well as this Court's scheduling order and its local rules, and propounds the following Statement of Uncontested Facts, *to wit*:

**FACT NO. 1:** Plaintiff Steven David Cook (hereafter "Plaintiff" or "Cook") was incarcerated in the Saline County Detention Center from Friday, June 29, 2012 through Monday, July 2, 2012. *See* Exhibit Nos. 1, 2 and 3 which all state Plaintiff's date of incarceration.

**FACT NO. 2:** On his first day of incarceration Cook suffered what Dr. Troxel called a prolapsed rectum which, essentially, is when the lower portion of the colon closest to the anus protrudes from the rectum. *See* Exhibits 1 & 2 and most specifically Exhibit No. 6, the excerpted deposition of Dr. Troxel, the jail doctor. He says that Cook had a prolapsed rectum, Ex.6 at pp. 9 & 10, that the prolapse looked like hamburger meat and was the size of a cereal bowl, roughly 6 to 7 inches wide. *Id.,* at pp. 13 & 14.

1

Admittedly, Dr. Troxel said that the problem was not life threatening but he did say specifically that, "If I had rectal prolapse, I would want the situation rectified as quickly and efficiently as possible, Ex.6 at p. 17, and more importantly, he made it very clear that if a private patient had such a medical condition he would rectify the situation as quickly as possible. Ex. 6 at 24.

**FACT NO. 3:** Troxel was taken to examine Cook. He then told Lauren Furr and Sergeant Richards that Cook needed to be "out of here." *See* Excerpt of Melissa Furr's Deposition, Ex. 7 at pp. 16-17 & pp. 23-24 ("we need to get him out of here" & "he needed to be released" Dr. Troxel's exact words per Furr); *See also* Excerpt of Sergeant Richards deposition, Ex. 9 at pp. 24 thru 26 ("Well, I think he needs to get out of here" Dr. Troxel's exact wording per Richards).

**FACT NO. 4:** Dr. Troxel was clear that Cook's prolapsed rectum was beyond the scope of care that they could deliver in the jail and, further, that he [Troxel] recommended that Cook be taken to UAMS. Ex.6 at pp. 20-21.

**FACT NO. 5:** Dr. Troxel also said that he spoke directly with Sheriff Pennington, telling him [Pennington] that he could not deal with this situation at the jail. Ex.6 at 14. Troxel also says that, at that point, the sheriff agreed, saying that Cook would be released on Friday, June 29, 2012. Ex. 6 at 27.

**FACT NO. 6:** *Caveat* -- Richards says that Sheriff Pennington was not in the room when Troxel came to the Sergeants' office to make his recommendation that Cook be taken to the hospital. *See* Ex. 9 at 20-27 & 33. However, it is undisputed that Pennington, who had the authority to run the jail, knew of Cook's condition and knew of Dr. Troxel's recommendation that he [Cook] be released to seek medical care or that he

be taken to the hospital.  Pennington's deposition, Ex. 11, is replete with Pennington's admissions **a)** that he knew of Cook's condition, *see* Ex. 11 at p. 13 **b)** that, based upon the jail administrator's original recommendation, he made the decision to release Cook, *id.* at pp. 14 & 14, **c)** that based upon subsequent information from either Andy Gill or the jail administrator he [Pennington] changed his mind and decided not to release Cook to seek care, *id.,* at 16, 17 & 20, **d)** that ultimately it was his [Pennington's] decision not to release Cook and not to seek medical care for him, *id.,* at 23-26, and **e)** that, that he knew of Dr. Troxel's recommendation that Cook be released or taken to the hospital when he made the decision to ignore the doctor's opinion and keep Cook in the detention center for three (3) days until the next Monday, July 2, 2012.  *See* Ex. 11 at 26, 27, 31, 32 & 33.

**FACT NO. 7:**  In a somewhat contradictory statement, Pennington said that they always transport an inmate to the hospital if the doctor recommends it.  Ex. 11 at 33-35.  Troxel, however, makes it clear that he did, indeed, recommend that Cook be taken to UAMS.  P

**FACT NO. 8:**  Gill states that Pennington told him that he would release Cook if it became clear that the jail was going to have to pick up significant medical costs.  *See* Exhibit No. 4.  Pennington admits that he sometimes releases inmates if medical care is going to be a big expense on the county.  *See* Ex. 11 at 38.  Pennington admitted in the same breath in which he indicated an aversion to picking up the costs of medical care for inmates that he had the authority to release Cook but chose to keep him incarcerated with a prolapsed rectum despite the specific recommendation of the jail's physician.  Ex. 11 at 49.

**FACT NO. 9:** Deputy McKinney testified that Andy Gill called the jail and ordered them not to release Cook. *See* Ex. 3. Gill, however, says that he only "asked" that Cook not be released. *See* Ex. 8 at 14 through 23. *See* specifically Gill's testimony that he only "asked" at p. 21 and his admission that he [Gill] had no authority to run the jail, *id.,* at 23 and that he had no knowledge of what Dr. Troxel had recommended when he urged Pennington to keep Cook. *Id.,* at 27.

**FACT NO. 10:** *Gill* told Pennington that he had information that Cook had suffered a prolapse before and that he could use it to get out of jail. However, Gill conceded in his deposition that he had no specific knowledge that this had ever happened before in any incarceration setting, *see* Ex 8 at 17 and, further, that he had no verifiable fact to lead him to believe that Cook had ever suffered a prolapse prior to Friday, June 29, 2012. *Id.,* at 18.

**FACT NO. 11:** Pennington, on the other hand, with the full knowledge that Gill had no authority to run the jail, *see* Ex. 11 at 31, made the decision to keep Cook and not send him for medical care with full knowledge of Dr. Troxel's recommendation. *See* Ex. 11 at 49.

**DATED** this 8th day of February, 2016

                        Respectfully submitted,

                        **STEVEN DAVID COOK**

By: __/s/--Edward G. Adcock_____
      **Edward G. Adcock**
      **Arkansas Bar No. 83001**
      1018 Cumberland # 11
      Little Rock, AR 72202
      Office Telephone: 501.690.6104
      Facsimile: 501.374.5198
      Email: egalaw@aol.com

&

        By: **/ss/  C. Daniel Hancock**
           **C. Daniel Hancock**
           **Arkansas Bar No. 2001-022**
           HANCOCK LAW FIRM
           610 East Sixth Street
           Little Rock, AR 72202
           Phone: 501.372.6400
           Email: hancock@hlblaw

## **CERTIFICATE OF SERVICE**

I, Edward G. Adcock, Arkansas Bar No. 83001, do hereby certify that on this 8th day of February, 2016, filed the above and foregoing Statement of Uncontested Facts with Clerk of the Court using the CM/ECF system which shall send notification of such filing to the following:

 Benjamin Jackson
 bjakckson@mwlaw.com

 Christine Cryer
 Christine.cryer@arkansas.ag.gov

 George Ellis
 Gellisinbenton@swbell.net

        By: **/s/--Edward G. Adcock**
           **Edward G. Adcock**
           **Arkansas Bar No. 83001**