IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVEN DAVID COOK                                                    PLAINTIFF

VS.                              NO. 4:15CV228 BRW

BRUCE PENNINGTON, Individually and
in his official capacity as Sheriff of Saline
County, Arkansas; LT DON BIRDSONG,
Individually and in his official capacity as
the Administrator of the Saline County
Detention Center; SALINE COUNTY,
ARKANSAS; DEPUTY LAUREN FURR,
Individually; SGT MIKE RICHARDS,
Individually; DEPUTY RYAN
McKINNEY, Individually                                              DEFENDANTS

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Introduction

The Complaint in this case, although consisting of some 20 pages, does not establish wrongdoing on the part of anyone at the Saline County Detention Facility (SCDF). Also, it does not establish a causal relationship between anything done or not done regarding the incarceration of Plaintiff and his medical predicament.

### Facts

On Friday, June 29, 2012, Plaintiff was arrested and booked in to the SCDF. On that same date, he requested medical attention for rectal prolapse. Medical personnel were called in to evaluate the situation, and stated he should be sent out. They then left the premises. However, before a decision was made to send him out, jail personnel were informed by Andy Gill, Deputy Prosecuting Attorney, who was acquainted with Plaintiff's history, that this was not a new event, and that the Plaintiff was able to return the rectal prolapse on his own without medical intervention. Indeed, there

was no blood or feces present. According to the examining physician, "it wasn't horrid." *Deposition of Roger Troxel, M.D.,* p.15 (Ex.E). Plaintiff exhibited no distress. Mr. Gill also expressed concern about the safety of the victim if Mr. Cook was released before his court appearance. Therefore, it was determined that he would stay at the SCDF until his appearance before a Judge on the following Monday morning. He was released on that Monday morning on a signature bond and taken to Saline Memorial ER. He was evaluated there, followed up later for a colonoscopy which revealed polyps and rectal prolapse, and was scheduled for a biopsy and colon resection which were performed successfully at Saline Memorial Hospital.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)].

## Deliberate Indifference and Cruel and Unusual Punishment

No Defendant can be said to have engaged in deliberate indifference in this case. The

definition of deliberate indifference is settled. A good working definition appears in *Pietrafeso v. Lawrence County, South Dakota*, 452 F. 3d. 978 (8th Cir. 2006). *Pietrafeso* quotes from *Moore v. Briggs*, 381 F. 3d, 771,773-74 (8th Cir. 2004), which in turn quotes *Farmer v. Brennan*, 511 U.S. 825, 837 (1994):

> To define deliberate indifference for these purposes, the Supreme Court has adopted the criminal law subjective standard of recklessness — "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Moore v. Briggs*, 381 F. 3d 771, 773-74 (8th Cir. 2004), quoting *Farmer v. Brennan*, 511 U.S. 825 (1994).

*Pietrafeso* at 982-3 . . . ."deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F. 3d 642, 646 (8th Cir. 2006). See also *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008):

> For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." [quoting *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995)]

No one in this case engaged in deliberate indifference. Plaintiff has not identified a witness that will establish that anyone on the staff of the SCDF who interacted with Plaintiff engaged in deliberate indifference with respect to his medical condition.

> A prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that she suffered from an objectively serious medical need and the "prison officials actually knew of but deliberately disregarded" that need.

*Id.* at 499. While Defendants knew of Plaintiff's rectal prolapse, there is no evidence that Defendants had reason to believe that it constituted a serious medical need or that Defendants disregarded that need. Conversely, Defendants were informed by the Deputy Prosecuting Attorney, who was well

acquainted with Plaintiff, that his condition had occurred many times and that he had always managed it on his own without medical intervention. *Deposition of Andrew Gill,* p. 15 (Ex.D). In fact, the examining doctor has stated that "most cases of rectal prolapse are chronic conditions where the patient can prolapse it and reinsert it." *Deposition of Roger Troxel, M.D.,* p.14 (Ex.E).

For the reasons stated above, the Court should find that the conduct engaged in by the Defendants did not constitute deliberate indifference or cruel and unusual punishment.

### Arkansas Civil Rights Act

Plaintiff also brings this action invoking the supplemental jurisdiction of the Court alleging a violation of the Arkansas Civil Rights Act of 1993. Summary judgment in favor of Defendants with respect to the federal standard will produce the same result in an action brought under the state statute, making this count moot. *Grayson v. Ross*, 483 F. 3d 887 (8th Cir. 2007)

### Qualified Immunity

Defendants are clearly shielded by the doctrine of qualified immunity.

As the Court is well aware, qualified immunity originated from the now-famous case of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), holding that in order to overcome qualified immunity, the plaintiff must demonstrate that the defendant caused injury and damages to plaintiff by depriving the plaintiff of a clearly established constitutional right. The analysis is well explained in *Robinson v. White County, Arkansas*, 452 F. 3d, 706, 710 (8th Cir. 2006):

> First, we ask whether the facts as asserted by the plaintiff show the officer's conduct violated a constitutional right. If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id*. at 710 (quoting *Wright v. Rolette County*, 417 F. 3d 879, 884 (8th Cir. 2005). This analysis is also

4

discussed in *Grayson v. Ross*, 454 F. 3d 802 (8th Cir. 2006), which also quotes *Robinson*.

Plaintiff's constitutional rights were not violated. None of the Defendants were intentional or reckless, as the deliberate indifference standard dictates. *Farmer v. Brennan, supra*.

Qualified immunity has been summed up quite succinctly as follows: Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. *Jones v. Minnesota Department of Corrections*, 512 F. 3d 478, 484; *Vaughn v. Greene County, Ark.*, 438 F. 3d 845, 852 (8th Cir. 2006). In this case, no Defendant crossed a bright line, and did not even engage in a bad guess. All of the Defendants are shielded by qualified immunity, and this litigation should be dismissed as against all Defendants.

## The Sheriff's Shoes

While analyzing this case in the context of qualified immunity, one should stand in Sheriff Pennington's shoes. The doctor recommends that Plaintiff be taken out of the facility, then leaves for the day. After that, a Deputy Prosecuting Attorney lets the jail staff and Sheriff Pennington know that Cook can manipulate the prolapse at will, and that if let out, harm may come to his victim. It was Friday night, and Sheriff Pennington determined that a judge should hear what law enforcement and the prosecutor's office had to say regarding Cook's release. *Supplemental Affidavit of Bruce Pennington* (Ex.F). Holding Cook over the weekend was not only the prudent thing to do, it would have been poor judgment on Sheriff Pennington's part to release Cook in the face of that information. His exact words from his supplemental affidavit bear repeating: "My decision was based on the information conveyed to me about Mr. Cook's condition, his voluntary ability to manipulate the prolapse, and Mr. Gill's concern for the safety of the victim." *Supplemental Affidavit of Bruce Pennington* (Ex.F).

**Defendants Furr, Richards, and McKinney**

Defendants Furr, Richards, and McKinney were mere witnesses to events pertinent to this action. None of them participated in the decisions made with regard to actions taken in connection with Plaintiff's medical condition, and none of them took any actions themselves with regard to Plaintiff's medical condition. Defendant Furr witnessed the Plaintiff's condition. She escorted medical personnel, but did not assist them in carrying out medical care. *Deposition of Melissa Furr,* pp. 36-7 (Ex.C). Defendant Richards did not witness the Plaintiff's condition. He overheard people talking about it. *Deposition of Mike Richards,* pp. 24-36 (Ex.H). Defendant McKinney did not witness the Plaintiff's condition, and he had no authority to make decisions. Defendant McKinney does, however, corroborate Sheriff Pennington's testimony. McKinney heard Gill on a speaker phone saying that he had information that Plaintiff could manipulate the prolapse and that the victim feared for her safety. *Exhibit 1, Deposition of Ryan McKinney;* pp. 21-3 (Ex.G).

**Conclusion**

Because none of the Defendants engaged in conduct constituting deliberate indifference, because none of the Defendants directly or proximately caused any damages to Plaintiff, and because all of the Defendants are entitled to qualified immunity, the Court should grant summary judgment in favor of Defendants.

Respectfully submitted,

/s/ George D. Ellis
GEORGE D. ELLIS (Ark. Bar No. 72035)
Attorney for Defendants
Ellis Law Firm, P.A.
126 North Main Street
Benton, Arkansas 72015
(501) 315-1000 (telephone)
(501) 315-4222 (fax)
*gellisinbenton@swbell.net*

6

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of February, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all parties in interest.

                          /s/ George D. Ellis